HARRY D. GIHON et ux.

*v.*

JAMES H. MORRIS et al.

[Decided October 24th, 1918.]

1. Where sellers of real estate innocently misrepresent to the buyers that the title was all right and marketable, and the buyers, relying on this representation part with their money, equity will grant them relief by rescission of the sale.

2. If such sale is rescinded, the buyers must account for the use of the property and the sellers for the interest on the price paid.

3. The evidence in this case shows that the price of the property was $5,500 and not $5,000.

On bill, &c.

*Mr. Charles J. Falcey* and *Mr. John H. Kafes,* for the complainants.

*Mr. Frederick W. Gnichtel* and *Mr. Barton B. Hutchinson,* for the defendants.

BACKES, V. C.

This bill is to rescind a contract for the sale of land on the ground of misrepresentation and to recover the purchase price.

The defendants sold to the complainants a dwelling-house on Bellevue avenue, Trenton, in 1908, for $5,500. The complainants occupied it as their home and recently, just before the bill was filed, sold it to one Barlow for an increased sum, and upon the title being examined by the purchaser it was found to be defective and he refused to carry out his bargain. The defect in the title was this: The vacant lot upon which the complainants' house and three others were erected by the defendants was owned by Thomas J. Donoghue, now deceased, who by his will gave his

real estate to his widow for life, and by the ninth section devised as follows:

"After the decease of my said wife, I give and devise all my said lands and real estate to said five children above mentioned, to wit, Joseph Doran, Mary T. Doran, John J. Doran, Thomas Donoghue and Joseph Donoghue, in equal shares; and if either of them be *then* deceased and leaving lawful issue, said issue shall be entitled to take the share of his or her parent, and if either of them be deceased without leaving such issue the survivors shall take the whole of said estate in equal shares."

Joseph Donoghue conveyed to the widow. John died without issue. The widow and the remaining three devisees, Mary T. Doran, John J. Doran and Thomas J. Donoghue, who are still living, conveyed the premises in 1906 to James H. Morris, who held it for the defendants, as co-partnership property. It is quite apparent that the defendants did not acquire and had not a clear title to the property conveyed to the complainants. Mrs. Donoghue had but a life estate and the remaindermen's vested fee is liable to be divested upon their dying before the life tenant, leaving children. One John J. Doran has two children.

When the complainants bought the property they placed a mortgage on it for $3,500 and paid the difference in cash. They sue to recover the $2,000 on the ground that the title was misrepresented to them. William J. Morris negotiated the sale with Mr. Gihon, and upon the latter suggesting that he would secure a lawyer to search the title was told that it was unnecessary, that the title was all right, meaning, as Mr. Morris admits he intended, to convey that the title was free from defect, that it was clear and marketable. There can be no doubt, from the testimony of the two who made the bargain, that the representation was that the title was perfect in the defendants in all respects, nor that it was untrue, in fact. The complainants' counsel argues that the representation was a mere expression of opinion, but I cannot accept that view; it was, as well, a representation of a fact, and was so regarded, and was intended to persuade Mr. Gihon of the needlessness of having the title examined. For such a misrepresentation, upon which the complainants relied and parted with their money, equity will grant relief. *Eibel v. Von Fell, 55 N. J. Eq. 670.* An effort was made to show that

the representation was knowingly false and intentionally made to deceive, in which, however, the complainants have failed. The Morrises paid the fair market value for the vacant lot and expended a large sum of money in building houses on it. It is barely possible that they suspected that complete ownership was not in their grantors and that all was not right, and took a "gambler's chance," but the heavy expenditures they made is a powerful argument in favor of their belief in the integrity of the title. It was not necessary, though, for the complainants to go to that length to entitle them to recover. Proof of willful falsehood was not essential. It is sufficient that the representation was one of fact, that it was false and that the party relying upon it suffered in consequence. *Eibel* v. *Von Fell, supra; DuBois* v. *Nugent, 69 N. J. Eq. 149; Straus* v. *Norris, 77 N. J. Eq. 33.* As stated by Sir George Jessel, in *Redgrave* v. *Hurd, 20 Ch. Div. 1,* cited by Vice-Chancellor Emery in *DuBois* v. *Nugent:* "According to the decisions of courts of equity it was not necessary, in order to set aside a contract obtained by material false representation, to prove that the party who obtained it knew at the time when the representation was made that it was false. It was put in two ways, either of which was sufficient. One way of putting the case was: 'A man is not to be allowed to get a benefit from a statement which he now admits to be false. He is not to be allowed to say, for the purpose of civil jurisdiction, that when he made it he did not know it to be false; he ought to have found that out before he made it.' The other way of putting it was this: 'Even assuming that moral fraud must be shown in order to set aside a contract, you have it where a man, having obtained a beneficial contract by a statement which he now knows to be false, insists upon keeping that contract. To do so is a moral delinquency; no man ought to seek to take advantage of his own false statements.' The rule in equity was settled, and it does not matter on which of the two grounds it was rested."

There will be a decree for the complainants. The complainants must account for the use of the property; the defendants for the interest on the purchase price.

After deciding the main issue the defendants asked for a further hearing, setting up that the consideration price for the property was $5,000 and not $5,500, and that they were liable only for $1,500. Although William J. Morris and his wife testify that the price was $5,000, they have no definite recollection and speak only from impressions, while, on the other hand, Mr. and Mrs. Gihon are positive of the amount they paid and fortify their recollection by circumstances regarding which it is doubtful that they can be mistaken. The clear weight of the evidence favors the complainants. Mrs. Morris, a very esteemable lady, who was not present when the transaction was consummated, and who knows little of the matter other than what was told her by her husband, affirms that the price was $5,000, mainly upon her understanding that the purchasers of the remaining three houses paid $5,500, and that there was a reduction made to the Gihons of $500 because of their friendly and intimate relations. Mr. Morris is of the same opinion and for the same reason. Both witnesses are absolutely honest in their belief in this circumstance and mean to tell the truth, but are mistaken, and this is established by a Mrs. Weeden, who purchased the adjoining house and who testified that she paid $6,000 for it. If the defendants favored the complainants to the extent of $500, it was by reducing the asking price from $6,000 to $5,500. Now, the Gihons rely on a circumstance to corroborate their statements, which furnishes a firm and convincing basis for their recollection. They sold their home, the only property they owned, for $1,700, to buy the new one from the Morrises. Out of the proceeds they paid $1,500 and gave a note for $500, which, together with the $3,500 raised by mortgage, made up the $5,500. The cash and note were paid to Mr. William J. Morris in the Gihon old home in the presence of Mr. and Mrs. Gihon, and they so testify. It is not at all strange that Mr. Morris should not remember this, for it appears that his memory is not especially tenacious in regard to the details. He neither admits nor denies nor speaks specifically of facts calculated to induce belief, but rather he reasons from the standpoint, no doubt honestly enough assumed, that the selling price of the group of houses was $5,500 each, and that because of the

supposed reduction made to the Gihons he received but $5,000 from them. He is in error, as I have shown, in his hypothesis and necessarily in his conclusions. It is not remarkable that his memory fails to serve him and that he should have fallen into this mistake, nor is it unbecoming that I should place reliance in the circumstances supporting the testimony of Mr. and Mrs. Gihon. The Morris brothers are, and have been for years, extensively engaged in the building and selling of dwelling-houses. In carrying on their business, dwelling-houses were a commodity, while with the Gihons the transaction was epochal; it was for them the purchase and acquisition of a home, and it is but reasonable to deduce that their recollection of what they paid is keener and that their memory is more reliable than that of the merchant who, out of hundreds of like sales, attempts to recall the price of this one. There are also these two things in the case that strongly persuade me that the truth is with the Gihons. It is alleged in the bill, and virtually admitted by the answer, that the purchase price was $5,500. On the first day's hearing there was not the slightest challenge of this allegation. After the hearing was over Mr. Morris said to Mr. Gihon that he, Gihon, was mistaken in his testimony of the manner in which the $2,000 had been paid, that the note given in part payment was not for a thousand dollars, as Mr. Gihon had testified, but that it was for $500, and that $1,500 was paid in cash. That testimony stands in the case uncontradicted and I must give it due weight.

As I understand, the parties regard the use of the house and the interest on the purchase price as a stand-off, and a further accounting will not be necessary.

Some testimony was given to the effect that a fireplace was torn out and a window installed by the Gihons. This has increased rather than diminished the value of the property.

There will be a decree directing the defendants to pay to the complainants $2,000 on the 4th day of June next at two o'clock at the office of Mr. Gnichtel, at which time the complainants will deliver a deed of conveyance without covenant, unless other arrangements convenient to the parties are made. Possession must also be given at that time.

The complainants are entitled to costs.